**SIOUX VALLEY HOSPITAL ASSOCIATION, a charitable corporation,
Plaintiff and Appellant,**

v.

**TRIPP COUNTY, South Dakota,
Defendant and Appellee.**

No. 15251.

Supreme Court of South Dakota.

Considered on Briefs Sept. 17, 1986.

Decided April 22, 1987.

Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

---

Donald E. Covey, Winner, for defendant and appellee.

MORGAN, Justice.

Plaintiff and appellant, Sioux Valley Hospital Association (Hospital), appeals from an order granting summary judgment to the defendant and appellee, Tripp County (County). By way of this action, Hospital seeks reimbursement for hospitalization expenses for an alleged indigent patient whose residence was Tripp County, South Dakota. The trial court below granted summary judgment based on the fact that Hospital failed to notify County of the patient's hospitalization within fifteen days of admittance as required by SDCL 28–13–34. We affirm.

On August 22, 1984, a premature baby boy was born in the Gregory County Hospital. The parents of this boy are alleged to be indigent. Immediately after birth, the boy was flown to Sioux Falls, South Dakota, and admitted to Sioux Valley Hospital at 11:55 p.m. on August 22, 1984. Gregory County Hospital records indicated that the parents were residents of Gregory County, South Dakota. The records also indicated that the parents' mailing address was Rural Route, Dixon, South Dakota. Dixon is a town in Gregory County.

On August 23, 1984, Sioux Valley Hospital personnel sent a notice as required by SDCL 28–13–34 to Gregory County. Gregory County officials received the notice and replied on September 4, 1984, by sending an Application to Apply for Assistance. On September 5, 1984, a social worker at Sioux Valley Hospital met with the parents to help them complete the application and answer any questions they may have. At that time, the social worker was informed by the parents that Gregory County was not their proper county of residence. Hospital then sent out a notice dated September 5, 1984, this time to Tripp County. This notice was filed by the Tripp County Auditor on September 7, 1984.

The total hospital stay stretched from August 22, 1984, to October 11, 1984. The total expenses for the hospitalization were nearly $20,000. County first raised the fifteen-day notice issue when it filed its motion to dismiss this action on September 30, 1985.

Hospital offers three arguments in an attempt to avoid this somewhat draconian application of SDCL 28–13–34. Initially, Hospital claims that they complied with the fifteen-day notice provision of SDCL 28–13–34. Secondly, Hospital contends that even if the fifteen-day time limit was not met, it should be tolled by Hospital's filing of notice with the incorrect county. Thirdly, Hospital claims County should be equitably estopped from asserting the notice provisions of SDCL 28–13–34 with respect to the hospitalization costs incurred after County received actual notice of the hospitalization. We hold that these arguments are not persuasive.

In our recent decision, *St. Paul Ramsey v. Pennington County*, 402 N.W.2d 340 (S.D.1987), we had occasion to discuss a county's liability under the statutory scheme for reimbursement of medical expenses for indigent residents. In that case, we stated:

It is well settled in South Dakota that, 'the obligation to support poor persons results not from the common law, but from statutes providing for their care from public funds.' *Sioux Valley Hospital Association v. Davison County*, 298 N.W.2d 85, 86 (S.D.1980); *State of North Dakota v. Perkins County*, 69 S.D. 270, 273–274, 9 N.W.2d 500, 501 (1943); *Hamlin County v. Clark County*, 1 S.D. 131, 45 N.W. 329, 331 (1890). 'No liability exists for reimbursement for relief furnished unless there is a statute authorizing the reimbursement or the relief is furnished pursuant to the request of someone having authority to act.' *Davison County, supra, quoting Perkins County*, 69 S.D. at 274, 9 N.W.2d at 501.

*St. Paul Ramsey, supra*, at 342.

SDCL 28–13–34 requires that within fifteen days after admittance, a hospital must give notice of the hospitalization to the patient's county of residence. In determining how to calculate this fifteen-day period, we look to SDCL 2–14–14, which states:

The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last is a holiday and then it also is excluded.

Fractions of a day are to be disregarded in computations which include more than one day, and involve no questions of priority.

Hospital contends that under this statute the fraction of August 22 should be disregarded and that the computation should begin on August 23. Hospital further reasons that August 23 should then be excluded since it is the first day of the period of computation. Thus, Hospital would have us read SDCL 2–14–14 to allow it a total of seventeen days to file notice with the county auditor.

■ A correct application of the statute requires us to begin the computation on the first day of admission, that being August 22. Under the statute, we would then exclude August 22 and begin counting the appropriate number of days. This computation leaves Hospital one day short of compliance. Hospital's contention that August 22 should be excluded because the patient was only admitted for a fraction of a day is untenable. The language of SDCL 2–14–14 directing that "fractions of a day are to be disregarded" is misinterpreted by Hospital. That portion of the statute simply tells us that days are to be considered as one time unit and not broken down into smaller time segments. This prevents confusion surrounding a situation where a patient was admitted in the *morning* but the required notice was not given until the *afternoon* on the final day of the notice period. Without the provision directing us to disregard fractions of a day this afternoon filing would be too late. It is clear under SDCL 2–14–14 that the computation of the time period is to begin with the day the patient is admitted.

■ Hospital next contends that since it acted in good faith and filed notice with what it believed to be the proper county the time period for filing should be tolled. Hospital analogizes this situation to the case where a plaintiff files suit in the wrong venue only to have the statute of limitations run prior to realizing the error. This analogy misses the mark. In situations where the case has been improperly venued, the defendant still receives notice of the pending action. County in this case received no notice prior to the running of the statutory period. We agree with Hospital that they did not sleep on their rights. We must note, however, that through no fault of its own, County did not receive the notice required by our legislature. "A hospital must furnish notice to the county following emergency hospitalization in compliance with SDCL 28–13–34 ... before the county is liable for the costs of emergency hospitalization." *Sioux Valley Hospital Ass'n v. Jones County*, 309 N.W.2d 835, 837 (S.D.1981). Hospital made the error, not County.

In *Roane v. Hutchinson County*, 40 S.D. 297, 300, 167 N.W. 168, 168 (1918), this court held

that the obligation of a county to furnish care and relief for poor and indigent persons ... is purely statutory, and there is no statute law in this state authorizing the payment by the county for services voluntarily rendered by any one in caring for such poor in the absence of an express or implied contract made, in the manner provided by law, with the proper county officers binding and obligating the county to pay for such services.

SDCL ch. 28–13 governs poor relief. Section 16 provides that the county commissioners shall have the oversight and care of the poor. Section 32.1 requires certain filings prior to NON-emergency hospital assistance. Section 33 establishes liability of the county for emergency hospitalization "as hereinafter expressly provided." Section 34 then goes on to provide that "there shall be no liability on any county for the [emergency] hospitalization unless within fifteen days from the admittance ... notice ... is filed with the auditor of the county." At issue is the expenditure of public funds. There is no provision in the statute for the county commissioners to expend funds to pay any portion of the hospitalization in this case.

Finally, we address the equitable estoppel argument raised by Hospital. A careful review of the record indicates that Hospital pleaded an action at law only and did not include a request for equitable relief. Furthermore, we do not find evidence in the record that would indicate that Hospital raised the equitable estoppel argument before the trial court. Since this oversight was not brought to our attention by County, and since the equitable estoppel issue was completely briefed by the parties, we will address the issue.

■ Initially, we must point out that "estoppels against the public are little favored and should be used sparingly." *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179, 179 N.W.2d 15, 17 (1970). This court has dealt with estoppel actions against municipal corporations in the past, but this is the first time we have been called on to review an estoppel argument against a county. We find that the cases involving municipal corporations are persuasive and virtually indistinguishable from cases involving a county. As we stated in *Hoogterp*, estoppels "are applied against municipal corporations with caution and only when exceptional circumstances demand their application to prevent manifest injustice." *Id.* at 179–80, 179 N.W.2d at 17.

■ While a good argument can be made for the injustice of allowing County to escape possible liability for expenses involving a nearly nine-week hospital stay, this is not enough. "This court recently ruled that mere municipal acquiescence is not sufficient to permit an estoppel. Some affirmative action must have been taken upon which the other party acted in reliance and substantially changed his position." *Northwestern Public Serv. v. City of Aberdeen*, 90 S.D. 627, 637, 244 N.W.2d 544, 549 (1976). That holding was once again reaffirmed in *Sioux Falls Const. Co. v. City of Sioux Falls*, 297 N.W.2d 454, 459 (S.D.1980). Hospital points to no affirmative action on behalf of County upon which Hospital acted in reliance and substantially changed its position. As we said in *St. Paul Ramsey. supra*, at 343, "Count[y] further contend[s] that [Hospital's] equitable arguments are best reserved for the legislature, since [Hospital's] ability to recover the costs is entirely governed by statute. We agree."

We recognize that the result of this decision is harsh, but under the laws as written by the legislature we have no choice but to affirm the grant of summary judgment for County.

HENDERSON, J., and FOSHEIM, Retired Justice, concur.

WUEST, C.J., and SABERS, J., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court did not participate.

WUEST, Chief Justice (dissenting).

I concur with Justice Sabers' dissent, except for the estoppel portion.

SABERS, Justice (dissenting).

I dissent.

County should be responsible for the medical bills from the date it received the notice of hospitalization until the date the patient was discharged from the hospital. In other words, although County is not responsible for the 15 days prior to notice, once it received notice of the hospitalization and did nothing to make substitute arrangements, nor did anything to inform Hospital that it was not going to pay for the hospitalization, it should be held responsible for the medical expenses incurred after notice, i.e., from September 7, 1984 through October 22, 1984.

The statutes [1] provide that it is not the hospital but rather the county which is

---

1. SDCL 28–13–1 states in part as follows:
"Every county shall relieve and support all indigent persons who have established residency therein, ..."
SDCL 28–13–16 states in part:

"The county commissioners in each county shall have the oversight and care of all poor persons in the county so long as those persons remain a county charge, and shall see that those persons are properly relieved and taken care of in the

responsible for the hospital expenses incurred on behalf of an indigent person. Instead of each county maintaining and operating its own hospital, a county has the option to have another hospital care for its indigent resident with the understanding that the county will reimburse the hospital for the actual costs of caring for that patient. SDCL §§ 28–13–28 through 28–13–32, inclusive. The purpose of SDCL 28–13–34 is to put the county on notice that one of its indigent residents is in the hospital, that the hospital intends to seek payment from the county for its services, and that the county has the option of obtaining alternate arrangements for hospitalization.[2] Here, Hospital fulfilled this purpose when it notified County on September 7, 1984. By its actions, therefore, Hospital demonstrated substantial compliance and came within the "intent" of the notice statute even though "by a literal construction [Hospital] may not be within its letter." *Application of Leo's Bus Service, Inc.,* 342 N.W.2d 228, 230 (S.D.1984).

Although I recognize that generally estoppel against the public is little favored, *City of Rapid City v. Hoogterp,* 85 S.D. 176, 179, 179 N.W.2d 15, 17 (1970), and then only when there has been some affirmative action by the party estopped, e.g., *Missouri River Telephone Co. v. City of Mitchell,* 22 S.D. 191, 116 N.W. 67 (1908), *Tubbs v. City of Custer,* 52 S.D. 458, 218 N.W. 599 (1928), I submit that the instant facts present precisely the type of "exceptional circumstances" necessary to estop County and prevent manifest injustice. *Hoogterp,* 85 S.D. at 179–180, 179 N.W.2d at 17. In *Eden v. Board of Trustees of State University,* 49 A.D.2d 277, 374 N.Y. S.2d 686 (1975), *dismissed on other grounds, Eden v. State,* 103 Misc.2d 461, 426 N.Y.S.2d 197 (1980), the court recognized that estoppels against the state are applicable only in truly exceptional cases and wrote: "But no branch [of government] is entirely immune from scrutiny. The courts must weigh the degree of manifest injustice against the effect, in the particular case, of intervention into public processes ... There is no rule of thumb." *Id.* 374 N.Y.S.2d at 692.

Hospital argues that if it had been informed by County that the notice was untimely filed and that County was refusing to pay the bill, then Hospital would have had several options. First, Hospital could have dismissed the patient from its care and had the patient go to County for medical assistance. Second, Hospital could have released the patient for one day, then readmitted the patient, filed another notice of hospitalization which would have been within the fifteen-day period from the second admittance, and thus held County responsible for the second admittance. Obviously, neither one of these alternatives would have served the best interests of the patient.

There is no common law duty for the support of the poor; thus, any duty which lies is solely a creation of statute. Our code establishes the law of South Dakota and its provisions, as well as all proceedings thereunder, are to be liberally construed with a view toward effecting its objects and promoting justice. SDCL 2–14–12; *Matter of Estate of Wolff,* 349 N.W.2d 33, 35 (S.D.1984). County should be held responsible for the medical costs from the date of notice, September 7, 1984, until the date of discharge, October 22, 1984. This should be done on the basis of

matter provided by law, and shall perform all the duties with reference to such poor persons that may be prescribed by law...."
SDCL 28–13–33 states in part:
"[W]henever hospitalization for an indigent person has been furnished by a hospital in any emergency case, the county where the indigent person has established residency shall be liable to the hospital as herein provided, ..."

**2.** SDCL 28–13–35. *Substitute arrangements for hospitalized indigent patient—County not liable to hospital after failure to cooperate.*

In any case of such hospitalization, when such county, ... makes a reasonable arrangement for adequate and suitable care and removal of such indigent person elsewhere and notifies the hospital thereof in writing, and the hospital unreasonably fails or refuses to extend cooperation to effect such changed arrangement, there shall be no liability on such county for any hospitalization, subsequent to such failure or refusal.

the intent, meaning, and purpose of the statute since Hospital complied with the underlying purpose of the notice requirement. SDCL 28–13–34 should be interpreted in the just and equitable manner for which it was intended, so that it fulfills its purpose and none other. That is the only statutory interpretation which is equally fair to Hospital,[3] County, and indigent patients.

Accordingly, I would reverse and remand for trial.

**3.** The majority opinion attempts to bootstrap itself into the hearts and minds of the readers by claiming similarity with our recent cases involving St. Paul Ramsey Medical Center. *See: St. Paul Ramsey v. Pennington and Moody Counties,* 402 N.W.2d 340 (S.D.1987); *St. Paul Ramsey v. Codington Co.,* 402 N.W.2d 345 (S.D.1987). Substantial and real differences exist in these cases:

1. Sioux Valley Hospital *is* a South Dakota Hospital as required by South Dakota statute and St. Paul Ramsey *is not.*

2. Sioux Valley Hospital is a health care facility licensed by South Dakota authorities as required by South Dakota statute and St. Paul Ramsey *is not.*

3. Sioux Valley Hospital *filed* a statement of costs as required by South Dakota statute and St. Paul Ramsey *did not.*

4. The St. Paul Ramsey cases *involve* reciprocity between states and the Sioux Valley Hospital case *does not.*

For all of these reasons, recovery should be allowed here.