**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert A. FRENCH, Defendant and Appellant.**

Nos. 18135, 18139.

Supreme Court of South Dakota.

Considered on Briefs Oct. 4, 1993.

Decided Dec. 22, 1993.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Rick A. Ribstein of McCann, Martin and McCann, Brookings, for defendant and appellant.

WUEST, Justice.

Defendant Robert French (French) appeals from his conviction of three counts of a Class 6 felony under SDCL 32–4–16, raising two issues: First, that if his actions did constitute a crime, he should have been charged under SDCL 32–5–27, violation of which is a Class 2 misdemeanor; and second, that SDCL 32–4–16 describes a specific intent crime for which the State failed to meet its burden of proof to sustain a conviction under the statute. We affirm.

### FACTS

French was primarily in the business of purchasing and trading used vehicles among car dealers. In 1990, French bought, sold and traded approximately 185 vehicles. Roughly fifty or sixty of French's 1990 transactions involved vehicles obtained from a Nebraska car dealer. South Dakota investigators suspected the Nebraska dealer was involved in turning back vehicle odometers. When a problem arose with a title to a car that French had obtained from the Nebraska dealer, French agreed to cooperate with the investigation of the Nebraska dealer by turning over all of his (French's) records to the state investigators. At some point, the focus of the investigation became French's paperwork and recordkeeping on the cars he obtained from the Nebraska dealer.

As will be discussed further herein, when a South Dakota car dealer obtains a car from another state (a "foreign" car), the South Dakota dealer is not required to obtain a South Dakota title to the car if the car was acquired as part of a trade. In a trade situation, the South Dakota dealer attaches what is known as a "Form 39" to the foreign title, and passes it on to the next dealer or subsequent purchaser. If the South Dakota dealer pays cash for the foreign car, a South Dakota title must be obtained. The filing fee for this paperwork is five dollars. We note that South Dakota dealers are exempt from paying excise tax on used vehicles since July 1, 1990; that tax is eventually paid by the ultimate purchaser of the vehicle.[1]

---

1. Under the facts of this case, it is undisputed that French was without liability for sales tax on

During 1990, there were numerous vehicles for which French paid cash; therefore, he sent the foreign title plus five dollars to the state to have a South Dakota title issued. Prior to July 1, 1990, he also paid the excise tax due on numerous vehicles. On other vehicles that involved trades, he completed a Form 39 which was attached to the foreign title and passed on to the next dealer. The gist of French's actions that formed the basis of his felony convictions was his supplying false information regarding three vehicles for which he completed a Form 39, indicating that the vehicles were brought into South Dakota as trades. Because the title history of these vehicles showed otherwise, the State charged that French did not trade for the foreign vehicles, but instead purchased them outright. Therefore, he should not have completed a Form 39, but should have sent in the foreign title plus five dollars to have a new title issued. Thus, he was charged with supplying false information in an application under SDCL 32–4–16.

### DISCUSSION

■ The questions presented in this case require us to engage in statutory construction. Matters of statutory construction are questions of law. *State v. Harris,* 494 N.W.2d 619, 622 (S.D.1993) (citing *Vellinga v. Vellinga,* 442 N.W.2d 472, 473 (S.D.1989)); *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992). We review conclusions of law *de novo. Harris,* 494 N.W.2d at 622 (citing *Rusch v. Kauker,* 479 N.W.2d 496, 499 (S.D. 1991)).

■ "The purpose of the rules of statutory construction is to discover the true intention of law, and that intention must be ascertained primarily from the language expressed in the statute." *Hieb v. Opp,* 458 N.W.2d 797, 800 (S.D.1990) (citing *Reid v. Huron Bd. of Educ.,* 449 N.W.2d 240 (S.D. 1989)). The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said, and we must confine this determination to the language used by the legislature. *In re AT & T Info. Sys.,* 405

N.W.2d 24, 27 (S.D.1987) (citations omitted). We construe statutes according to their intent as determined from the statute as a whole. *Brishky v. State,* 479 N.W.2d 489, 495 (S.D.1991); *Meyerink v. Northwestern Pub. Serv. Co.,* 391 N.W.2d 180, 183 (S.D. 1986) (citing *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985)). The words of the statute enacted by the legislature are presumed to convey ordinary meaning, except in the situation where the context or the legislature's apparent intention justifies departure. *Meyerink,* 391 N.W.2d at 183–84; *Whalen,* 490 N.W.2d at 280. This court "will not liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction." *In re Presentation Sisters, Inc.,* 471 N.W.2d 169, 175 (S.D.1991); *Sioux Valley Hosp. Ass'n v. Yankton County,* 424 N.W.2d 379, 382 (S.D.1988).

■ The statute under which French was charged and convicted, SDCL 32–4–16 states:

Any person who knowingly gives false, fraudulent or erroneous information in connection with an application for the registration or titling of a vehicle or any application for assignment of a vehicle identification number or replacement documents or gives such information in connection with a review of such applications or falsely certifies the truthfulness and accuracy of information supplied in connection with the registration and when required, titling of a vehicle, is guilty of a Class 6 felony.

SDCL 32–4–16. French urges that because he did not fill out a vehicle title application, he cannot be convicted under this statute. However, the language of the statute most pertinent to this case speaks of giving "false ... or erroneous information *in connection with* " the titling of a vehicle (emphasis added). Although a Form 39 is not a title application, French was well aware that the information he supplied would be used in connection with obtaining a South Dakota title for a vehicle previously titled in another state. The information that French supplied

---

any of the transactions in question. The state conceded that French saved the $5 filing fee on

each of the three transactions that formed the basis for his felony convictions.

was false or erroneous, indicating that the vehicles in question were obtained in a trade, when the title history indicated otherwise.

██ French urges that if he committed any violation, he should have been charged under SDCL 32–5–27. Prior to July 1, 1990, the pertinent language of SDCL 32–5–27 stated:

> Every dealer, person, firm or corporation, which brings into the state or purchases any used or secondhand out-of-state motor vehicles not currently licensed in this state for the purpose of sale or resale, except as a trade-in on a new motor vehicle or another used motor vehicle ... shall, within fifteen days from the date of purchase or entry of the motor vehicle into the limits of this state ... title the motor vehicle pursuant to chapter 32–3 and pay the excise tax pursuant to chapter 32–5B but is not required to license the vehicle. A violation of this section is a Class 2 misdemeanor.

SDCL 32–5–27 (1988).[2] It is true that if French had simply neglected to complete *any* paperwork on these vehicles, he might have been guilty of three counts of a Class 2 misdemeanor under SDCL 32–5–27, rather than three counts of a felony.[3] While the State might have chosen to charge French under SDCL 32–5–27 for failure to title vehicles, the prosecutor was not obligated to do so. "[W]hen an action violates two criminal statutes, the government may prosecute under either, providing it does not discriminate against any class of defendants." *State v. Big Head,* 363 N.W.2d 556, 561 (S.D.1985) (citing *State v. Secrest,* 331 N.W.2d 580, 583 (S.D.1983)). *See also State v. Perry,* 440 N.W.2d 389, 391–92 (Iowa 1989) (stating that when a single act violates more than one criminal statute, the prosecutor may exercise discretion in selecting which charge to file,

even though the two offenses call for different punishments); *and State v. Roth,* 382 N.W.2d 348, 351 (Neb.1986) (noting that the prosecutor is free to choose crime for which conviction is sought, where a defendant's conduct constitutes violation of one of several criminal statutes).

██ The record shows that after a trial to the court, and before announcing his decision, the judge stated:

> I'm of the opinion that probably SDCL 32–4–16 is a very severe statute and possibly that needs some amending and some clarification, rather than to create just carte blanche a Class VI Felony for that type of activity because it doesn't seem to be quite appropriate to the situation we have here in Court today or yesterday. However, that is the law as the Court finds it today, and I can't do anything about that. That's a matter of legislation.

We agree with the trial judge that the legislature is the correct forum for any revision to the statutory scheme. Our interpretation of the law in a way that fails to acknowledge plain statutory language "would amount to judicial supervision of the legislature" which we will not do. *State v. Galati,* 365 N.W.2d 575, 577 (S.D.1985).

██ French also urges that because SDCL 32–4–16 contains the word "knowingly" in the statute, it is a specific intent crime requiring the State to bear the additional burden of proving such intent. We disagree. We have stated that, "The use of the terms 'intentionally' or 'knowingly' merely designate that the culpability required is something more than negligence or recklessness." *State v. Shilvock–Havird,* 472 N.W.2d 773, 777 (S.D.1991) (citing *State v. Balint,* 426 N.W.2d 316 (S.D.1988); *State v. Huber,* 356 N.W.2d 468 (S.D.1984); *State v. Barrientos,*

---

**2.** As previously indicated, the 1990 legislature amended this section to provide that, effective July 1, 1990, dealers are not required to pay the excise tax; any title issued to a dealer would indicate that no excise tax had been paid, and that the excise tax would be paid by the subsequent purchaser—the ultimate consumer of the car. A 1992 amendment expanded the time period from fifteen to thirty days.

**3.** The maximum penalty for French's convictions on three counts of violations of SDCL 32–4–16, a

Class 6 felony, was six years imprisonment in the state penitentiary and a $6000 fine. SDCL 22–6–1(8). Had French been charged under SDCL 32–5–27, a Class 2 misdemeanor, the maximum penalty for conviction on three counts would have been 90 days in the county jail and a $300 fine. SDCL 22–6–2(2). (But note that in 1991, the legislature increased the monetary penalty for a Class 2 misdemeanor to a maximum of $200 per count.)

444 N.W.2d 374 (S.D.1989); *State v. Bailey,* 464 N.W.2d 626 (S.D.1991)). In *Shilvock–Havird* we considered another statute that proscribes the giving of false statements. 472 N.W.2d at 777 (citing our perjury statute, SDCL 4–9–4). We noted that conviction under such a statute "merely requires that the defendant know of the falsity of the statement. It does not require a mental state beyond that. For example, there is no requirement that the statement be made with intent to defraud or with intent to deceive." *Id.* Likewise, the State was not required to prove that French filled out the Form 39s, indicating that he had acquired the three vehicles on a trade, with an intent to defraud or deceive. The State was only required to prove that he knew the information he supplied was false. The trial judge found that the State met that burden. We have stated that, " 'In reviewing the sufficiency of the evidence, we consider the evidence in a light most favorable to the verdict. A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt.' " *State v. Ganrude,* 499 N.W.2d 608, 610 (S.D.1993) (quoting *State v. Blalack,* 434 N.W.2d 55, 59–60 (S.D. 1988)).

 It appears from the record that what French did in 1990 was to engage in numerous automobile trade and purchase transactions, and maintain confusing and convoluted records regarding those transactions. He maintained an accrual type of bookkeeping system regarding his transactions with the Nebraska car dealer, "keeping files open" and keeping a running balance of cars and cash that were changing hands. Often there were significant gaps in time before vehicles for which he agreed to trade actually came into his possession. During those time gaps, vehicles that were involved in the trades, yet still owned by another dealer, were sold and titled to third parties. In any event, while he maintained that there were trades for the cars in the transactions for which he completed the three Form 39s, he produced no evidence at trial to substantiate his claim. The end result of French's actions was that he filled out a Form 39 for each vehicle, attached it to the foreign title, and gave those

documents to the subsequent dealers. The information he placed on the Form 39s was false and erroneous, in violation of SDCL 32–4–16.

Affirmed.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs with a writing.

HENDERSON, Justice (concurring).

At first blush, it appeared that this prosecution for these felonies was overzealous. I was troubled and could not figure out whether the prosecution arose out of misinterpretation of the two statutes, namely SDCL 32–4–16 (felony statute) and SDCL 32–5–27 (misdemeanor statute). *See Nelson v. School Bd. of Hill City,* 459 N.W.2d 451 (S.D.1990) (the resolution is solely a question of which of two statutes is applicable, hence, a question of law). Perhaps, the thought crossed my mind, the felony charges arose out of Inspector Hilgeman's ambition to be tough when he remarked, according to Mr. Martin's sworn testimony, that he "was out to get French."

This entire investigation began because of a suspicion of spinning odometers. Apparently, the inspector believed that Terry Brown, the dealer from Nebraska, was the individual spinning the odometers (not French). Cooperating with the authorities, French turned over his records, pertaining to Brown, unto one Ron Ryzavy, a dealer inspector for the State of South Dakota. Hilgeman then entered the picture and a conflict arose between French and Hilgeman. Some of this conflict arose because French's records were not promptly returned to him.

Perspective is often attended by further reading and reflection. Often, it is spawned by a dramatic event. Saul, as an example, had a change in perspective when struck down to earth as a light in heaven flashed around him. Acts 9:3–6. Perspective evolves by different manifestations. Here, as I continued to ponder, I was struck with the thought that a danger would exist for the general public by a dealer's failure to strictly abide by Form 39 (not dramatic, you see).

Circuit Judge Bradshaw was apparently taken up with the same concern.

When French and his Nebraska counterpart traded vehicles, the exchange was not always immediate. French might trade a car today with the understanding that an equal car would eventually arrive. In modern day sports jargon, French traded for "a car to be named at a later date." However, he did not file the proper paperwork, Form 39, until after both dealers had exchanged automobiles. Thus, the final trade date sometimes occurred after French had already sold or transferred the car he had previously received, to someone else. This is the onset of danger to the citizens of our state. French's method leaves an imperfection on the chain of title.

Plainly written on Form 39 is this requirement: "To be attached immediately to Foreign (Out of State) Title and surrendered by purchaser to County Treasurer upon applying for Title and License." Thus, the information is important in the chain of title and provides information for the State and consumer/purchaser. French's alleged trading system, even in its most honest form, creates a gap in title and allows the dishonest to circumvent the law—a law designed to protect consumers. Used automobile dealers, when receiving a trade, act as consumers or are, at least, in privity with the ultimate consumer.

Additionally, SDCL 32-4-16 includes the "accuracy of information supplied in connection with the registration and ... titling of a vehicle[.]" Thus, the chain of possession is very important and Form 39 aids state officials in protecting consumers. Form 39 is supplied for the above reasons. *See In re Pam Oil, Inc.*, 459 N.W.2d 251 (S.D.1990); *Sales Tax Liability of Valley Queen Cheese*, 387 N.W.2d 39 (S.D.1986). Simply put, French's actions allow for abuse.

Essentially, my position is that if consumer protection is the goal, then the false information given by French is prohibited by SDCL 32-4-16 (felony statute) and that specific statute should be strictly enforced.

T'would not hurt the cause of statutory definition were the Executive Board of the Legislative Research Council (birthed to write understandable legislation) to draw a more distinctive line in these two statutes. Finally, under SDCL 19-10-2, I take judicial notice of SDCL 22-1-1 which provides:

> The rule of the common law that penal statutes are to be strictly construed has no application to this title. All its criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice.